1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KOPALOW & GIRISGEN, et al.,    )
                         Plaintiffs,    )         2:06-CV-00487-RCJ-(GWF)
                                   )
     vs.    )
                                   )            **ORDER**
PAYROLL SOLUTIONS, et al.,    )
                                 )
               Defendants.    )
———————————————————————)

      This matter coming before the Court on Plaintiffs' Motion to Remand (#9) filed May 9, 2006, and Defendants' Motion for Sanctions (#8) filed May 2, 2006. The Court has considered the Motions, the pleadings on file, and oral arguments on behalf of the parties.  IT IS HEREBY ORDERED that Plaintiff's Motion to Remand (#9) is *denied*. The Court finds instead, that Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth, causes of action are for ERISA benefits, and therefore are preempted by ERISA. At oral argument, Plaintiffs asked that all of its causes of action for ERISA benefits be striken and that they be permitted to pursue only an action for recision of the contract with these defendants in state court.  The Court therefore, strikes Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth causes of action with the instruction that Plaintiffs may bring a claim in state court for recision of the contract and plan only, and not for any claim to damages under ERISA, or for ERISA

1    benefits, or for any other damage based upon a calculation of ERISA benefits allegedly due

2    under the plan. IT IS ALSO ORDERED that Defendants' Motion for Sanctions (#8) is

3    *denied*.

4

5                                              **FACTS**

6            The instant action was initially filed in Clark County District Court on April 3, 2006,

7    and subsequently removed by Defendants to Federal Court on April 20, 2006. The Complaint

8    alleges eight causes of action: (1) breach of contract, (2) breach of covenant of good faith and

9    fair dealing, (3) unjust enrichment, (4) fraudulent misrepresentation, (5) deceptive trade

10   practices, (6) breach of fiduciary duty, (7) fraudulent inducement, and (8) bad faith.

11           The dispute arises from an employment service agreement ("agreement") between

12   Defendant Payroll Solutions I, Inc., an employee leasing company, and several Plaintiffs,

13   including Plaintiff Mach One, LLC, Kopalow & Girisgen, and Kopalow and Girisgen. The

14   Plaintiffs accepted and utilized Defendants' offer of services including those of a traditional

15   human resources department, as well as the provision of retirement plans, prepaid legal

16   services and a wide range of self-funded insurance plans.[1]  As a result of the agreement,

17   Plaintiff Scott Brown ("Brown") through Payroll Solutions I, Inc., began working for Plaintiff

18   Mach One, and allegedly participated in Payroll Solutions I, Inc.'s employee health benefit

19   plan ("EHBP"). On or about April 11, 2005, Brown was diagnosed with cancer, and

20   underwent several surgical diagnostic procedures, incurring several thousand dollars of debt

21   _____

22           [1]Named Defendants actually include several Payroll Solutions entities, individuals, and
     Doe Defendants. Plaintiffs contend that the various Payroll Solutions entities are currently being
23   pursued by the State of Nevada "for illegally selling insurance and not paying taxes on illegal
     premiums collected," and that the State Insurance Commissioner has issued a Cease and Desist
24   Order  (See Pl.'s Reply Ex. 1.)

25                                          Page 2 of  15

to various local health care providers, and sought additional non-local medical treatment at

M.D. Anderson Cancer Center in Texas. Brown was advised by Defendant Payroll Solutions

I, Inc., that the medical treatments he sought needed to be pre-approved by the plan

administrator (Defendant Everest) to assure his treatments would be covered under the

medical plan offered by Payroll Solutions I, Inc.

In December 2005, Brown's physicians at M.D. Anderson Cancer Center determined

that Brown needed a specific surgical procedure due to the aggressive nature of his cancer,

and sought pre-approval from Payroll Solutions I, Inc. The Cancer Center was subsequently

advised that Defendant Everest refused to provide pre-approval because Brown had

exhausted his medical benefits for the calendar year.

Subsequently, the M.D. Anderson Cancer Center advised Brown that he owed the

Cancer Center $300,000. Apparently Everest had neither paid for, nor approved Brown's

claims on behalf of Payroll Solutions, in spite of Payroll Solutions' pre-approval for his

treatments. Brown has since executed a promissory note in the amount of $300,000 and has

begun to repay the obligation for which he is now personally liable.

Plaintiffs' complaint alleges that Defendants fraudulently failed to disclose the

maximum annual benefit available under the EHBP when describing the benefit options to

employees, specifically Brown. Plaintiffs contend that had Defendants disclosed the

maximum annual benefit limitation, Plaintiffs would not have purchased Defendants' benefit

plan.

On April 20, 2006, Defendants removed the lawsuit to federal court, claiming that

federal question jurisdiction is warranted because the EHBP against which Plaintiffs have

asserted their claims is governed by the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1001 et. seq., which allegedly provides Plaintiffs' exclusive remedy

1    and thus preempts any state law claim.

2        Plaintiffs filed the instant Motion to Remand (#9) on May 9, 2006, listing several

3    reasons why federal jurisdiction is inappropriate in this case. Plaintiffs' arguments for remand

4    fall into three major categories. First, Plaintiffs argue that Defendants re-characterize the

5    complaint to be one involving the denial of benefits under an ERISA plan, as opposed to an

6    action for fraud. Second, Plaintiffs contend that the EHBP is expressly exempted from

7    ERISA preemption. Specifically, Plaintiffs contend that the statutory preemption exemption

8    involving Multiple Employer Welfare Arrangements (MEWA's) applies in this case because

9    Payroll Solutions entities lease employees to multiple businesses. Finally, Plaintiffs contend

10   that Defendants do not qualify as an ERISA employer.

11       On May 2, 2006, Defendants filed the instant Motion for Sanctions (#8), arguing that

12   Plaintiffs should be sanctioned for naming improper entities as Defendants.

13                                       **DISCUSSION**

14   **I. Jurisdiction**

15       Principles of federalism mandate that "[a] federal court is presumed to lack

16   jurisdiction in a particular case unless the contrary affirmatively appears." General Atomic

17   Co. v. United Nuclear Corp., 655 F.2d 968, 968–69 (9th Cir. 1981). Unlike state courts,

18   federal courts have no "inherent" or "general" subject matter jurisdiction.  They can

19   adjudicate only those cases which the Constitution and Congress authorize them to

20   adjudicate: basically those cases involving diversity of citizenship, or a federal question, or to

21   which the U.S. is a party.  See Kokkonen v. Guardian Life ins. Co. of America, 511 U.S. 375

22   (1994).

23       The burden of establishing federal jurisdiction rests upon the party asserting

24   jurisdiction. Id. Further, lack of subject matter is never waived and may be raised by either

25                                      Page 4 of  15

1   party or the court at any time.  Attorneys Trust v. Videotape Computer Products, Inc., 93

2   F.3d. 593, 594–95 (9th Cir. 1996).  "Nothing is to be more jealously guarded by a court than

3   its jurisdiction.  Jurisdiction is what its power rests upon. Without jurisdiction it is nothing."

4   In re Mooney, 841 F.2d. 1003, 1006 (9th Cir. 1988).

5   **II. ERISA**

6          A claim that arises under ERISA is removable to federal court, and any state claim

7   addressing the same area is preempted. See AMJUR, Pensions § 821. However, if the claim

8   does not arise under ERISA, but ERISA is raised as a defense, then the claim is not

9   removable and a state court will decide the ERISA defense subject to review on certiorari by

10  the United States Supreme Court. Id. (citing Prihoda v. Shpritz, 914 F. Supp. 113 (D. Md.

11  1996); Hamburger v. Desoutter, Inc., 886 F. Supp. 616 (E.D. Mich. 1995); State of Minn. by

12  Ulland v. International Ass'n of Entrepreneurs of America, 858 F. Supp. 937 (D. Minn.

13  1994)). Even if a defense to a state law action implicates federal law, as does ERISA

14  preemption, the action is not removable, because a defense generally does not appear as an

15  element of the complaint; thus, federal preemption that merely serves as a defense to a state

16  law action (sometimes called conflict preemption) does not confer federal question

17  jurisdiction. Id. (citing Gabner v. Metropolitan Life Ins. Co., 938 F. Supp. 1295 (E.D. Tex.

18  1996); Agnifili v. KFC Corp., 924 F. Supp. 78 (W.D. Ky. 1996)).

19         **A. Re-characterization of Complaint**

20         Here, Defendants contend that Plaintiffs' claim to benefits under the alleged ERISA

21  plan forms the "essential part"of their Complaint and therefore Plaintiffs claims arise under

22  ERISA. Specifically, Plaintiffs' first, second, third, fourth, sixth, seventh, and eighthth claims

23  expressly seek payment of benefits or reference benefits as the source of the alleged injury,

24

25                                      Page 5 of  15

and thus are governed by an ERISA EHBP. Defendants further contend that Plaintiffs'
remaining claim (5) is preempted because liability for the claim would only exist due to
Payroll Solutions I, Inc.'s administration of ERISA regulated benefits.

In opposition, Plaintiffs contend that Defendants' re-characterization of the Complaint
is an attempt to avoid liability for Plaintiffs' state law tort and contract claims, and to
dissuade the Court from focusing on the exemption to ERISA preemption.

In <u>Aetna Health Inc. v. Calad</u>, 542 U.S. 200 (2004), the United States Supreme Court
broadened the range of state law claims involving employee benefit plans preempted by
ERISA. The Court held that state law claims brought to remedy the denial of benefits under
ERISA-regulated benefit plans fall within the scope of, and thus are completely preempted
by, ERISA. In a concurring opinion, Justice Ginsberg stated that "[v]irtually all state law
remedies are preempted." <u>Calad</u>, 542 U.S. at 222. To determine whether the causes of action
fell within the scope of ERISA, the Court examined the complaint, the statute on which the
claims were based, and the plan documents.

Here, Plaintiffs imply that they are not seeking to recover benefits under the EHBP,
but state instead, that they are seeking damages for Defendants' alleged fraudulent acts. An
examination of Plaintiffs' Complaint however indicates that Plaintiffs' claims indeed arise
from Plantiffs' EHBP, and thus arise under ERISA. Specifically, Counts first, second, third,
fourth, sixth, seventh, and eighth, make repeated reference to the benefits, and or denial of
benefits under the EHBP, and seek payment of benefits offered by the EHBP by way of state-
based contract and tort claims. (<u>See</u> Def.'s Opp. at 4.)

Therefore, pursuant to the Supreme Court's reasoning in <u>Calad</u>, this Court finds that
Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth, causes of action are for

ERISA benefits, and therefore are preempted.  See also Pilot Life Ins. Co. v. Dedeaux, 481

U.S. 41, 54–56 (1987) (finding that ERISA preempts state-based claims for breach of

contract and tort).


**III. Payroll Solutions' EHBP**

Before presumptively assuming that the Complaint raises claims for ERISA benefits,

the Court must determine whether Defendants are an EHBP under 29 U.S.C. § 1002(1),

which defines the type of benefit plans subject to and governed by ERISA. In so doing, the

statute defines the terms "employee welfare benefit plan" and "welfare plan" as:

> [A]ny plan, fund, or program which was heretofore or is hereafter established
> or maintained by an employer or by an employee organization, or by both, to
> the extent that such plan, fund, or program was established or is maintained
> for the purpose of providing for its participants or their beneficiaries, through
> the purchase of insurance or otherwise . . . medical, surgical or hospital
> benefits.

29 U.S.C. § 1002(1).

Title I of ERISA applies to any "employee benefit plan" established or maintained by

an employer engaged in commerce or by an employee organization or both. 29 U.S.C. §

1003(a). Not only does ERISA apply to any "employee benefit plan" as defined above, but

ERISA preempts the application of state law to any employee benefit plan in most instances.

Therefore, before ERISA preemption may apply, the Court must determine if

Defendant is an "employer" under the statute. In Nationwide Mutual Insurance Co. v.

Darden, 503 U.S. 318 (1992), and Community for Creative non-Violence v. Reid, 490 U.S.

730 (1989), the United States Supreme Court adopted a common-law test for determining

who qualifies as an employee under ERISA. The Court construed the term to incorporate "the

general common law or agency, rather than . . . the law of any particular state," and stated:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Nationwide Mutual, 503 U.S. at 323–34.

Furthermore, the U.S. Department of Labor has issued an advisory opinion holding that under the common-law test,

> consideration must be given, among other matters, to whether the person for whom services are being performed has the right to control and direct the individual who performs the work, not only as to the result to be accomplished, but also as to the details and means by which the result is to be accomplished; whether the person for whom services are being performed has the right to discharge the individuals performing the services; and whether the individual performing the services is as a matter of economic reality dependent upon the business to which he or she renders services.

Dept. of Labor Advisory Opinion 95-29A (Dec. 7, 1995); Advisory Opinion 95-22A (Aug. 25, 1995). The Department of Labor has also stated its opinion that "a contract purporting to create an employer-employee relationship . . . will not control" in the determination of an employer-employee relationship, "where common law factors (as applied to the facts and circumstances) establish that the relationship does not exist." Advisory Opinion 2005-12A (May 16, 2005); see also Advisory Opinion 95-22A (Aug. 25, 1995).

Here, Defendants contend that removal is warranted because the EHBP against which Plaintiffs have asserted their claims meets the definition of 29 U.S.C. § 1002(1), and that

Payroll Solutions I, Inc. is the "employer," because the agreement so states. (See Def.'s Notice of Removal Ex. B.) As such, Defendants contend that ERISA provides Plaintiffs' exclusive remedy, thus preempting Plaintiffs' state law claims.

Defendants contend that Plaintiffs are not an ERISA employer under the common law factors listed in Nationwide Mutual yet fail to demonstrate in any detail how Defendants do not qualify as an employer under the common law. Instead, Plaintiffs argue that they, (the Plaintiffs) were the actual employer under the agreement, and therefore Defendants cannot possibly be an "employer" pursuant to ERISA. (See Reply at 12.)

Some courts have held that it is "unnecessary to delve into the [Nationwide Mutual] common-law principles of agency" to determine the employer-employee relationship. See Castiglione v. U.S. Life Ins. Co., 262 F. Supp. 2d 1025, 1031–31 (D.C. Az. 2003). For example, in Castiglione, the District Court of Arizona held that the application of common-law principles to the employment agreement at issue "asks the Court to apply a narrow definition inconsistent with [ERISA's] statutory language." Id. at 1032. The court held that ERISA "merely requires [the employee leasing company] to act 'directly as an employer or indirectly in the interests of an employer, *in relation to an employee benefit plan.*'" Id. (emphasis in original).[2]

---

[2]According to the Castiglione court, the employment leasing company was considered to be an ERISA employer because the employee (1) signed an employment agreement acknowledging that he was an "at-will" employee; (2) the employee completed a department of Justice I-9 form which listed the employee leasing company as his employer, (3) the leasing company paid the employee's salary, (4) the leasing company withheld the employee's taxes, including the employer's portion of FICA; (5) the leasing company paid workers' compensation premiums for the employee; (6) the leasing company paid the employee's basic term life and accidental death and dismemberment premium and offered him other insurance benefits; (7) the employee agreed to report all occurrences, accidents, and injuries to the employee leasing company; and (8) the employee agreed to submit to the leasing company for drug testing. 262 F.

Here, under circumstances similar to those in <u>Castiglione</u>, the Court finds that Defendants acted directly as an employer or indirectly in the interests of an employer, in relation to Plaintiffs' EHBP, and therefore fit within the definition of an employer under ERISA. Under the agreements for services at issue, Defendants maintained full responsibility for payment and payroll of employees, taxes, unemployment insurance, and  administrative function customarily performed by an employer. Defendants secured coverage for workers' compensation, offered and provided an optional employee benefit package, and retained the right and authority to hire, discipline, replace, terminate, direct, supervise, and control all leased employees. (Def.'s Pet. For Removal Ex. B. at 3–4.)

**IV. Preemption**

The question of federal ERISA preemption is governed by 29 U.S.C. § 1144. ERISA's preemptive reach has consistently been construed broadly to preempt those state laws which "in the normal sense of the phrase, [have] a connection with or reference to" any employee benefit plan provided the effect upon the plan is not tenuous or remote. <u>Shaw v. Delta Air Lines, Inc.</u>, 463 U.S. 85, 97 (1983); <u>Firestone Tire & Rubber Co. v. Neusser</u>, 810 F.2d 550 (6th Cir.1987).

 Subsection (b) of 29 U.S.C. § 1144 contains a "savings clause," or  exclusion from the preemptive reach of subsection (a)[3] as well as what is refereed to as the "deemer cause"

Supp. 2d 1025

[3] The savings clause and the accompanying "deemer clause" which qualifies it provide:
(2)(A) Except as provided in subparagraph (B), nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
(B) Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust

which together provide in short, that ERISA will preempt any state law relating to an ERISA "employee benefit plan" other than laws regulating insurance, banking, or securities. Under Subsection (b), however, a state may not regulate an employee benefit plan or trust subject to ERISA under its insurance, banking and securities laws simply by deeming or unilaterally determining that such a plan or trust is engaged in the business of insurance, banking or investments. <u>See</u> <u>Nat'l Bus. Ass'n Trust v. Morgan,</u> 770 F. Supp. 1169 (W.D. Ky., 1991).

**A. MEWA**

In addition to the "savings clause" exception to federal preemption, 29 U.S.C. § 1144(b)(6) modifies the preemptive effect of 29 U.S.C. § 1144(a) in the context of state regulation of Multiple Employer Welfare Arrangements ("MEWAs"). Section (b)(6)(A), which allows state insurance regulation of MEWAs without regard to whether they are employee benefit plans covered by Title I of ERISA provides:

> (A) Notwithstanding any other provision of this section-
>
> (i) in the case of an employee welfare benefit plan which is a multiple employer welfare arrangement and is fully insured (or which is a multiple employer welfare arrangement subject to an exemption under subparagraph (B)), any law of any State which regulates insurance may apply to such arrangement to the extent that such law provides-
> (I) standards, requiring the maintenance of specified levels of reserves and specified levels of contributions, which any such plan, or any trust established under such a plan, must meet in order to be considered under such law able to pay benefits in full when due, and
> (II) provisions to enforce such standards, and
> (ii) in the case of any other employee welfare benefit plan which is a multiple employer welfare arrangement, in addition to this title, any law of any State which regulates insurance may apply to the extent not inconsistent with the preceding sections of this title.

---

company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies. 29 U.S.C. § 1144(b).

29 U.S.C. § 1144(b)(6).

Plaintiffs contend that Defendants qualify as a MEWA. 29 U.S.C. § 1002(40)(A) defines a MEWA as:

> an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) [defining welfare benefit plans under ERISA] to the employees of two or more employers ··· or to their beneficiaries [excluding rural electric cooperatives and collective bargaining agreements]

**B. Even if not MEWA**

Defendants contend that ERISA preempts in this case regardless of whether the EHBP is considered a MEWA, and irrespective of any alleged violation of NRS 616B.691(3). Here, Defendants are correct. The case cited by Plaintiffs, Nat'l Bus. Ass'n v. Morgan, 770 F.Supp. 1169 (W.D. Kent. 1991), describes how MEWAs are subject to a dual regulatory system, wherein MEWAs may be regulated by state-based insurance regulations, whereas the plan and administrator are governed by and must comport with ERISA.

As correctly stated by Defendants, "if a health plan is a MEWA, it is subject to a dual reguratory scheme by which *some* state insurance regulations *might* apply to the extent they do not conflict with ERISA. (Def.'s Response at 8.) But, Title I of ERISA applies to the governance of the plan by the plan administrator. Therefore, regardless of whether the EHBP is found to be a MEWA, in this, or in other proceedings, this Court maintains federal question jurisdiction because ERISA applies to the governance of the plan by the plan administrator.

**V. Defendants' Motion for Sanctions**

Federal Rule of Civil Procedure 11 (c) states in pertinent part:

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) [improper representations to the Court] has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

. . .

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, … *an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.*

Sanctions may be imposed under Rule 11 if a document is not well grounded in fact. An objective reasonableness test is used to determine whether an adequate prefiling inquiry has occurred. Eastway Construction Corp. v. City of New York, 762 F.2d 243 (2d Cir. 1985). The circumstances of each case are considered, including the time available for prefiling inquiry and the source and complexity of available prefiling information. Brown v. Federation of State Medical Boards of the United States, 830 F.2d 1429, 1435 (7th Cir. 1987). Furthermore, a document is not well grounded in fact if an attorney has misrepresented the evidence. See generally, In re Disciplinary Action of Curl, 803 F.2d 1004 (9th Cir. 1986).

The second source of authority for potential attorneys' fees is the district court's inherent power. This power is derived from the court's need "to manage its own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. Nasco, Inc., 501 U.S. 32, 43 (1991). The "inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." Id. at 46.

A court should be cautious in exerting its inherent power and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in

assessing fees." Id. at 50. Because the court's inherent power is so potent, it should be exercised "with restraint and discretion." Id.  In Chambers, the Supreme Court indicated that the district court made detailed factual findings concerning the sanctioned party's involvement in the events of the case. See id. at 58. Recognizing the need for caution, some circuits require that a district court make a particularized showing of bad faith to justify the use of its inherent power. See  e.g., U.S. v. Int'l Bhd of Teamsters, Chauffeurs, 948 F.2d 1338, 1345 (2d Cir. 1991) (citing Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (requiring "a high degree of specificity in the factual findings of the lower courts")).

**A. Application**

Defendants contend that Plaintiffs should be sanctioned for listing as Defendants, sixteen corporate entities with names and/or corporate officers similar to the name/names of the original Defendant, Payroll Solutions, Inc. Defendants contend that Plaintiffs' behavior is sanctionable because the additional Defendants were only listed after Plaintiff found the entities on the Secretary of State's web page, and thus it is intended to harass, cause unnecessary delay or needlessly increase the costs of the proceedings. Defendants also contend that the factual allegations relative to all Defendants (but for Payroll Solutions I, Inc.) lack evidentiary support and thus violate Plaintiffs' Rule 11 obligations.

Defendants also points out that Plaintiffs' claims do not do not apply to all Defendants. For example, Defendants note that Plaintiffs' breach of contract claim cannot apply to the fifteen additional Defendants because no contract exists between Plaintiffs and any of the additional Defendants. (See Pl.'s Mot. for Sanctions at 6.) Defendants make a similar argument regarding Plaintiffs' state law tort claims.

In opposition, Plaintiffs contend that naming the additional Defendants is appropriate

in light of its discovery that the original as well as additional Defendants have been ordered by the State of Nevada to cease and desist illegally selling insurance. Plaintiffs explain its purpose for adding the additional defendants to be that additional Defendant Howard Winters is an officer of each entity being forced by the state of Nevada to cease and desist selling insurance, and that the payroll Solutions Defendants do not make any distinction between themselves.

Given Plaintiffs' argument, together with Rule 11's requirement of a reasonable inquiry "under the circumstances," the Court finds Plaintiffs' Amended Complaint to be sufficiently grounded in fact, not made upon an inadequate prefiling inquiry, not made in bad faith, or a misrepresentation of evidence. More appropriate than seeking sanctions for what Defendants argue are futile claims, additional Defendants should instead file motions for dismissal under Rule 12(b).

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand (# 9) is *denied*. The Court finds instead, that Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth, causes of action are for ERISA benefits, and therefore are preempted by ERISA. The Court therefore, strikes Plaintiffs' first, second, third, fourth, sixth, seventh, and eighth causes of action with the instruction that Plaintiffs may bring a claim in state court for recision only, and not for any claim to damages under ERISA, or for ERISA benefits. IT IS ALSO ORDERED that Defendants' Motion for Sanctions (# 8) is *denied*.

DATED: August 31, 2006.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE